733 P.2d 1066

**STATE of Arizona, Appellee,**

v.

**Karl Hinze LaGRAND, Appellant.**

**No. 6456.**

Supreme Court of Arizona.

Jan. 30, 1987.

Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Div., Diane M. Ramsey, Gary A. Fadell, Asst. Attys. Gen., Phoenix, for appellee.

Karp, Stolkin & Weiss, P.C. by Stephen M. Weiss, Elizabeth F. Claiborne, Tucson, for appellant.

GORDON, Chief Justice.

On February 17, 1984, appellant Karl LaGrand and his half-brother, Walter LaGrand, were convicted by a jury of murder in the first degree; attempted murder in the first degree; attempted armed robbery; and two counts of kidnapping. The brothers were sentenced to death for the first degree murder and to concurrent terms of years for the other charges. Both brothers challenge their convictions and sentences; however, their appeals have not been consolidated and we address issues raised by each in separate opinions. We have jurisdiction to hear Karl LaGrand's appeal pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031 and –4033.

Facts of the case are set out in *State v. LaGrand (Walter)*, 153 Ariz. 21, 734 P.2d 563 (1987). Additional facts necessary to resolve Karl's claims are adduced below.

## ARGUMENT

Although Karl and Walter did not consolidate their cases for appeal, Karl adopts by reference arguments II–V raised by his brother: refusal to give a lesser included offense instruction regarding felony murder; admission of gruesome photographs; excuse for cause of a juror with scruples against the death penalty; and denial of a change of venue. These arguments were explored at length and rejected in *State v. LaGrand (Walter)*, *supra*, and for identical reasons are rejected here. Appellant does, however, raise additional arguments concerning (1) ineffective assistance of counsel, (2) failure to grant substitution of counsel, (3) failure to give an intoxication instruction, (4) improper waiver of a jury regarding the allegation of prior convictions, and (5) problems with the constitutionality and application of the death penalty. Each is analyzed below.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Appellant argues that trial counsel was ineffective before, during and after trial. The test for ineffectiveness of counsel is now well established: the defendant must prove that counsel's representation was not reasonable under all the circumstances, i.e., that it was deficient, and that counsel's deficient performance prejudiced the defendant. *State v. Rossi*, 146 Ariz. 359, 364, 706 P.2d 371, 376 (1985); *see State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985). When deciding ineffectiveness of assistance claims we need not analyze the prongs of the test in any particular order. *State v. Salazar*, 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985). The defendant must prove both elements of ineffectiveness; lack of proof on either element will defeat the claim. *Id.*

Because Arizona's test for ineffectiveness is modeled after the United States Supreme Court's test fashioned in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *see, e.g., State v. Salazar*, 146 Ariz. at 541, 707 P.2d at 945, *Strickland* is particularly helpful in defining the minimal competence level required by counsel. Proof of deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064. We must determine "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064.

### A.

■ Appellant first argues that trial counsel's failure to pursue a Rule 11 mental incompetency motion prior to trial was deficient. However, counsel decided against pursuing a Rule 11 hearing only after interviewing Karl's psychologist three times. Also, not pursuing an insanity defense precluded opening Karl's juvenile record to inspection and exposing "all prior relevant conduct" from his past to scrutiny. *State v. Rodriguez*, 126 Ariz. 28, 31, 612 P.2d 484, 487 (1980). Further, no evidence of *M'Naughten* insanity existed. Counsel's decision not to pursue an insanity defense was not unreasonable.

### B.

■ Appellant also asserts that counsel's trial tactics were deficient. Appellant points out that his counsel waived an opening statement, cross-examined few witnesses, and failed to actively participate in the trial. Trial counsel must be more than a neutral observer; he must subject the state's case to meaningful adversarial testing. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984); *State v. Nash*, 143 Ariz. at 399, 694 P.2d at 229. When counsel's acts and

decisions approach those of a neutral trial observer, we will presume prejudice. *Id.*

 Although trial counsel here kept an exceedingly low profile, we cannot say that his performance was so deficient as to compromise the adversarial nature of the trial. Counsel's only realistic hope was to prevent a finding of first degree murder, and to that end he argued impulsivity in his closing remarks and during sentencing. Failure to cross-examine most witnesses was not deficient because co-defendant's counsel did an excellent job of cross-examining them. Counsel did cross-examine Dawn Lopez, and establish that Karl was kicked. While we normally expect to see more vigorous representation from counsel, particularly in a death penalty case, we cannot say that counsel's trial performance was ineffective.

### C.

 Finally, appellant argues that counsel was ineffective at the aggravation-mitigation hearing by failing to present all available mitigating evidence. The gravamen of appellant's complaint is that counsel failed to adequately question a defense psychiatrist concerning Karl's propensity to react impulsively under stress,[1] and did not call Karl's psychologist as a witness, choosing instead merely to introduce his report. Counsel did, however, question the psychiatrist concerning premeditation and extensively developed the depressing nature of appellant's background.

Counsel could have presented the appellant's case more fully and skillfully. Nonetheless, the test for counsel's ineffectiveness is not whether a better job could have been done, but whether his performance fell below the minimum threshold of professional skill established by case law. We hold that counsel's representation of appellant was not ineffective.

### SUBSTITUTION OF COUNSEL

In December 1983, appellant filed a *pro se* motion to remove his counsel. No hearing was held on this motion until January 30, 1984, the day before trial, at which time appellant's counsel moved to withdraw as attorney of record. The judge inquired into reasons behind the "Conflict of Interest Between Attorney and Client" asserted by appellant. Appellant complained that his attorney had visited him only three or four times prior to trial, he believed that his attorney was not prepared for trial because he had not told his attorney everything he felt his attorney should know, he had not received copies of all motions filed by his attorney, and his attorney told him that "[he] was going to get found guilty no matter what" and "[he] can't get no plea bargain because of public pressure." The proposed substitution of counsel was denied.

 A defendant is constitutionally entitled to representation by counsel or to proceed without counsel if he so chooses. *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975); *State v. DeNistor,* 143 Ariz. 407, 412, 694 P.2d 237, 242 (1985); Ariz. Const. art. 2, § 24; *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). However, a defendant is not entitled to any *particular* counsel, only to competent counsel. *State v. DeLuna,* 110 Ariz. 497, 500, 520 P.2d 1121, 1124 (1974). Thus a request for new counsel should be examined with the rights and interest of the defendant in mind tempered by exigencies of judicial economy. We have identified several factors to be considered by the trial judge: whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and

---

1. Appellant's premise that the psychiatrist would have testified favorably on appellant's propensity to act impulsively is based on written statements recorded by the psychiatrist after examining appellant. Appellant's Opening Brief at 21.

quality of counsel. *See State v. Lee*, 142 Ariz. 210, 220, 689 P.2d 153, 163 (1984); *State v. DeNistor*, 143 Ariz. at 413, 694 P.2d at 243. The trial court's decision will not be disturbed absent a clear abuse of discretion. *State v. Lee*, 142 Ariz. at 220, 689 P.2d at 163.

The trial court did not abuse its discretion. The trial had already been postponed numerous times and by the time of the motion nearly two years had passed. Substitution of counsel would have caused yet more delay. In addition, counsel had already been changed once. No real conflict between the appellant and counsel is discernible from the record; it simply appears that appellant would have been happier with other counsel. Finally, the judge commended counsel for "working very energetically and diligently on his client's behalf." The motion was properly denied.

## INTOXICATION INSTRUCTION

Appellant contends that evidence was sufficient to mandate giving an intoxication instruction to the jury, which could have negated the culpable mental state necessary for premeditated first degree murder. A party is entitled to an instruction on any theory reasonably supported by evidence. *State v. Shumway*, 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983). An intoxication instruction should be given only when the record supports such an instruction. *State v. Cruz-Mata*, 138 Ariz. 370, 373–74, 674 P.2d 1368, 1371–72 (1983).

The record does not indicate that an intoxication instruction was justified. Testimony indicated that the LaGrands drank beer and whiskey the day before the crimes, and that the night before the crimes they had a small party where beer and pizza were consumed and marijuana was smoked. Karen Libby testified that several days prior to the crimes she and

Karl "tripped" together on acid "on a few occasions". However, on redirect examination Libby admitted that she could not tell whether Walter and Karl were intoxicated the morning of the crimes. Also, neither appellant nor Walter showed any signs of intoxication at the bank where the critical events occurred. Denial of an intoxication instruction was not error.

## WAIVER OF JURY TRIAL ON PRIOR CONVICTIONS

On March 15, 1984, the trial court conducted a hearing to determine whether appellant was knowingly, voluntarily and intelligently waiving his right to a jury trial on the issue of prior convictions. 17 A.R.S. Rules of Crim.Pro., Rule 18.1(b). The trial court concluded that appellant's waiver was knowing, voluntary and intelligent. Appellant challenges that conclusion. The sole issue we need to decide is whether appellant's waiver was valid.[2]

Waiver of a constitutional right is a matter of grave concern. Our jurisprudence has long recognized that a constitutional waiver is not valid unless the defendant manifests "an *intentional* relinquishment or abandonment of a *known* right or privilege." *Montano v. Superior Court*, 149 Ariz. 385, 392, 719 P.2d 271, 278 (1986) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (emphasis added)). Thus Rule 18.-1(b)(1) requires that before the judge may accept a waiver of a jury trial he must address the defendant personally and advise him of his rights. Moreover, a waiver may be made only in writing or in open court. Rule 18.1(b)(2). In this case the waiver was made in open court, so we may examine the record ourselves to determine if indeed the waiver was valid.

**2.** Appellant argues that his waiver was "meaningless" because the trial court could not have possibly reconstituted the original jury after a delay. However, we have never held that a defendant is entitled to a jury trial on prior convictions by the same jury that originally convicted him. The case cited by appellant, *State v.*

*Brydges*, 134 Ariz. 59, 653 P.2d 707 (App.1982), merely holds that the jury which determines the existence or nonexistence of prior convictions must also determine whether they were "dangerous". Moreover, the delay in this case was attributable in part to defense counsel's own request for an accommodation of his schedule.

"THE COURT: ... The first thing I want to make sure of is that the defendant—when I say 'the defendant' this morning, I'm talking about Karl LaGrand, unless I say otherwise, since he's the only defendant that's involved in these proceedings this morning.

I want to ascertain that the defendant does waive his right to a trial by jury on the allegation of prior convictions.

Now, the defendant is not admitting the prior convictions. The County Attorney is going to be put to his proof; right?

MR. ALFRED [State's Counsel]: That's correct.

MR. GERSON [Defense Counsel]: Yes, Your Honor.

THE COURT: The only thing is that it will be determined by the Court after a non-jury trial rather than by a jury. Is that the way you intend to proceed?

MR. ALFRED: Yes, Your Honor.

THE COURT: Right?

MR. GERSON: Yes, Your Honor.

THE COURT: Well, I think under these circumstances, then Rule 18.1B needs to be complied with. That rule provides, 'The defendant may waive his right to trial by jury with consent of the prosecution and the Court,' and I have to determine that it's voluntary and knowing and intelligent, and I'm further required to ascertain that after advising the defendant of these rights.

So let me advise you right now of these things, Mr. LaGrand. You probably already know them, but as you can see, I'm required to personally tell you these things.

In the—in this case the County Attorney alleged that you had prior felony convictions, and if he succeeds in establishing that, it has the effect of increasing the punishment which is imposed.

You have the right to make the County Attorney prove that. You don't have to admit that. You have the right to make him prove it, and you also have the right to make him prove that to the satisfaction of a jury.

Now, your attorney indicated to myself and to the prosecutor at the conclusion of the trial before the jury that you wished to waive that determination by a jury; that is, not require that it be determined by a jury; is that correct?

MR. KARL LaGRAND: Yes, Your Honor.

THE COURT: All right. Is that still the way that you wish to proceed?

MR. KARL LaGRAND: Yes, sir.

THE COURT: You understand that in the absence of your waiving it—or agreeing to it, you would have the right to require that the prosecutor prove this to the jury by evidence produced here in the courtroom, and he would have to convince the jurors of that, all of them, beyond a reasonable doubt. He would have to do that by evidence produced in the courtroom, and you would have and you still have—indeed you have the full right to a trial on this issue, and you will get one here at this time. The only thing that is being given up is the right to have this determined by a jury. You understand?

MR. KARL LaGRAND: Yes.

THE COURT: You will have the right to put on any evidence that you might wish this morning. Your lawyer will have the right to cross-examine any witnesses that Mr. Alfred calls to the stand, but instead of his having to convince all of the jurors of the truth of these allegations of prior convictions and prove it to the jurors beyond a reasonable doubt, he'll have to prove it to me beyond a reasonable doubt. Do you understand that?

MR. KARL LaGRAND: Yes, Your Honor.

THE COURT: Has anyone promised you anything to get you to give up your right to a trial by jury on this matter?

(Discussion held off the record between Karl LaGrand and Mr. Gerson.)

MR. KARL LaGRAND: No, Your Honor.

THE COURT: Has anyone threatened you to get you to do this or promised you anything to get you to do this?

MR. KARL LaGRAND: No, Your Honor.

THE COURT: It has to be your own, free, voluntary choice and decision. Is it?

MR. KARL LaGRAND: Yes, Your Honor.

THE COURT: You understand this right that you have, to have it determined by a jury?

MR. KARL LaGRAND: Yes, Your Honor.

THE COURT: Is there anything else that you think I should advise the defendant?

MR. ALFRED: I think you've covered it, Your Honor.

THE COURT: Mr. Gerson?

MR. GERSON: I can't think of anything, Your Honor.

THE COURT: All right. It's my finding that the proposed waiver of jury trial on the allegation of prior convictions is knowing, voluntary and intelligent.

And you wish to consent to this waiver, Mr. Alfred?

MR. ALFRED: Yes, Your Honor.

THE COURT: And this is how you wish to proceed, too, Mr. Gerson?

MR. GERSON: Yes, Your Honor.

THE COURT: All right. It's ordered that the waiver be approved."

R.T., March 15, 1984, at 2–6. We agree with the trial court that the waiver was knowing, voluntary and intelligent.

The appellant also urges that *no* defendant can make a truly valid waiver unless apprised of the fact that conviction on the allegation of prior convictions can be used to enhance punishment and perhaps even trigger the death penalty. We recently rejected this argument in *State v. Hooper*, 145 Ariz. 538, 703 P.2d 482 (1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 834, 88

L.Ed.2d 805 (1986), wherein we held that trial courts have no obligation to inform defendants that a finding of prior convictions may enhance punishment. Such knowledge has no bearing on the narrow issue of trial by judge or jury since the waiver has no effect on enhancement. *Id.* at 548–49, 703 P.2d at 492–93.

■ However, we believe that the better rule, particularly in capital cases, is to inform the defendant of the potential for enhanced punishment once convicted of priors. Knowledge of the ultimate consequence of the decision surely will aid defendants in making a truly knowing and intelligent choice, as contemplated by the Constitution and Rules of Criminal Procedure, with a minimal sacrifice of judicial time.

■ Here the trial court informed appellant that conviction "has the effect of increasing the punishment which is imposed." The judge had no obligation to be more explicit. A defendant need only know that conviction on priors enhances his punishment in order to make an informed choice. Accordingly, we find that appellant's waiver was valid.

## DEATH PENALTY

Appellant raises three death penalty issues. He first argues that specific findings on aggravating and mitigating circumstances were erroneous. We addressed this issue in *State v. LaGrand (Walter)*, 153 Ariz. 21, 734 P.2d 563 (1987), and analysis therein applies here.[3] In addition, appellant's argument that the aggravating circumstance of a prior conviction involving the use or threat of violence was not proven beyond reasonable doubt is premised on the waiver argument rejected earlier.

■ Appellant next argues that comparing the present case only to cases in which the death penalty was imposed rath-

---

**3.** I respectfully dissent from this section of the opinion, which expresses the view of the majority of the Court. I would strike the aggravating circumstance of pecuniary gain as found by the trial court and would remand for resentencing for reasons articulated in *State v. LaGrand (Walter)*, at 36 n. 5, 734 P.2d at 578 n. 5.

**490**

er than comparing the facts and the defendant to homicide cases in which the death penalty was not imposed precludes a true proportionality review. We disagree. Our purpose in conducting a proportionality review is to ensure that the death sentence is not excessive or disproportionate to the penalty imposed in similar cases. *See State v. LaGrand (Walter)*, at 21, 734 P.2d 563. This purpose can be accomplished by examining cases in which we affirmed or reversed a defendant's life sentence or affirmed or reversed a defendant's death sentence. We decline to hold, however, that a "true" proportionality review requires examination of particular types of cases. All that is required is an examination of "similar" cases.

Finally, appellant argues that failure to require a sentencing judge to find that aggravating circumstances outweigh mitigating circumstances beyond any reasonable doubt renders the death penalty statute in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and corresponding provisions of the Arizona Constitution. Defense counsel concedes that this issue has been raised previously and rejected by this court. Therefore, we decline at this time to say anything more on the issue.

### CONCLUSION

Appellant's convictions and sentences are affirmed.

Jack D.H. Hays (Retired), James Duke Cameron, William A. Holohan, JJ., concur.

FELDMAN, Vice Chief Justice, concurring.

I concur in the decision and in the court's analysis, except that portion pertaining to the aggravating circumstance involving pecuniary gain. 152 Ariz. at 489, 733 P.2d at 1072. With respect to that portion of the opinion, I join in the views expressed by Chief Justice Gordon in footnote 3, at 489, 733 P.2d at 1072.