NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

ROBERT ALLEN WALKER, *Appellant*.

No. 1 CA-CR 14-0171
FILED 7-23-2015

Appeal from the Superior Court in Coconino County
No. S0300CR201300378
The Honorable Dan R. Slayton, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adele Ponce
*Counsel for Appellee*

David Goldberg Attorney at Law, Fort Collins, CO
By David Goldberg
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Kent E. Cattani joined.

**O R O Z C O**, Judge:

¶1          Robert Allen Walker appeals from his convictions and sentences for two counts of aggravated driving under the influence, both class 4 felonies.  On appeal, Walker argues that his waiver of counsel was involuntary and requires a remand for a new trial.  Finding no error with his waiver of counsel, we affirm Walker's convictions and sentences.

## FACTS AND PROCEDURAL BACKGROUND

¶2          After being charged with two counts of aggravated driving under the influence, Walker entered an initial "not guilty" plea.  Through counsel, Walker thereafter negotiated a plea agreement with the State.  At the change-of-plea and sentencing hearing, however, Walker changed his mind and rejected the plea agreement.

¶3          Soon after, Walker filed several pro per motions stating his belief that, among other things, he was receiving inadequate representation from the Coconino County Public Defender's Office.  At a later hearing, the trial court stated it could not accept these motions because Walker was represented by counsel at the time and because the motions were "completely without legal basis."  The trial court nevertheless told Walker that he could file a determination of counsel motion.  Walker then stated his belief that the Public Defender's office was not defending him adequately because his counsel had stated in an email to the prosecutor that "if [Walker] continues to stick to his position, the trial followed by prison looks like the only way."  Walker further stated:

> It seems a poor choice to give up my rights . . . in order to have probation.  And what I am looking to do is to make sure that this goes on the [appellate record], because I have no hope of winning a trial in this [c]ourt . . . because my attorney said so.

The trial court told Walker that "[y]ou and I are interpreting this [email] a little bit different then" and that counsel was "giving a realistic expectation

of your outcome if you go to trial and you lose[.]" Walker maintained his position, however, that he would "sacrifice none of [his] rights at any time."

¶4 After the hearing, Walker again filed pro per motions that, in part, sought removal of his Public Defender counsel and stated a general refusal to accept representation from the county Public Defender's office. Walker's counsel then filed a motion to withdraw because "Mr. Walker has indicated that he wants to represent himself." The trial court set two hearings to discuss whether Walker wanted to represent himself, and Walker failed to appear both times.

¶5 Walker again filed a motion to dismiss his court appointed counsel, and he appeared at the third hearing set by the trial court to discuss his representation. At the hearing, Walker stated that "[his] goal . . . [was] just to make sure that [he was] not represented by the Coconino County Public Defender's Office." The trial court explained that Walker either would have to hire his own attorney or accept court-appointed counsel. Walker stated that he did not wish to waive his right to counsel, but he could not afford a private attorney. After more discussion, Walker declared "I knowingly, willingly and voluntarily refuse the counsel of any actors from the Coconino County [Public] Defender's Office, and say here and now that I am willing to represent myself."

¶6 After this statement, the trial court asked if Walker was waiving his right to representation and asserting his right to represent himself. More discussion followed, with the trial court eventually appointing advisory counsel from the Coconino County Legal Defender's office. The trial court again inquired if Walker wished to represent himself. Although Walker stated that he felt he had no choice, he also stated that he was making the decision "of [his] own free will." The trial court found that Walker had knowingly, intelligently, and voluntarily waived his right to counsel, but it emphasized that an attorney would be appointed if Walker changed his mind at any time.

¶7 Within a few weeks, Walker sought to have his advisory counsel removed from the case, and he stated once again that "I do not wish to have a public defender sitting next to me[.]" The trial court told Walker that he "did not have to utilize advisory counsel" and "[i]t is your discretion . . . to use advisory counsel." The court ultimately stated:

> I want to make sure that as a self-represented litigant that you
> have that ability and you have that opportunity, whether or
> not at this stage of the trial [or the] beginning stages, you

> believe that you may not use him. You may not ask him [for] any advice. I am going to keep him on board, just in case sometime during the trial you find a necessity to do so.

The trial court concluded that advisory counsel would sit in the back of the courtroom during proceedings to be available for Walker as needed.

**¶8** Walker's case proceeded to trial and Walker represented himself throughout. At trial, the State presented evidence that after being pulled over for failing to stay in his lane while driving, Walker admitted to police that his driver's license was suspended and that he had consumed several alcoholic beverages. Walker failed two field sobriety tests and a horizontal gaze nystagmus test. After his arrest, Walker took two breath tests that reported blood alcohol contents of .142 and .127, respectively.

**¶9** A jury convicted Walker on both counts. Walker was sentenced to four months' imprisonment and three years' probation. This timely appeal followed, and we have jurisdiction pursuant to Article 9, Section 6, of the Arizona Constitution and Arizona Revised Statutes sections 12-120.21.A.1, 13-4031, and -4033.A.1 (West 2015).[1]

## DISCUSSION

**¶10** The sole issue on appeal is whether Walker's expressed lack of confidence about his relationship with the Coconino County Public Defender's Office amounted to an "irreconcilable conflict," which would invalidate his otherwise knowing, intelligent, and voluntary waiver of counsel. We review a trial court determination about substitution of counsel for an abuse of discretion. *State v. LaGrand*, 152 Ariz. 483, 487 (1987).

**¶11** If represented, criminal defendants are entitled to the effective assistance of counsel. U.S. Const. amend. VI; Ariz. Const. art. 2, § 24; *Faretta v. California*, 422 U.S. 806, 819 (1975); *State v. Lee*, 142 Ariz. 210, 216 (1984). However, defendants are not entitled to an attorney of their choosing or to a meaningful relationship with counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983); *State v. Henry*, 189 Ariz. 542, 546 (1997). Defendants may elect to waive counsel and self-represent. U.S. Const. amends. VI, XIV; Ariz. Const. art 2, § 24; *Faretta*, 422 U.S. at 818-19; *State v. De Nistor*, 143 Ariz. 407, 412 (1985). If a defendant elects to self-represent, the trial court must determine if the defendant is knowingly, intelligently, and voluntarily waiving the right to counsel. *State v. Cornell*, 179 Ariz. 314, 322 (1994). An

---

[1] We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

otherwise knowing, intelligent, and voluntary waiver of counsel may be deemed involuntary if the record reveals an "irreconcilable conflict" between a defendant and attorney that deprives the defendant of effective assistance of counsel. *See State v. Moody*, 192 Ariz. 505, 508-09, ¶¶ 21-23 (1998).

¶12       Walker argues that his case is substantially similar to the facts analyzed by the Arizona Supreme Court in *Moody*. In that case, the supreme court found a "deep and irreconcilable conflict" existed between the defendant and his attorney. *Id.* at 507, ¶ 13. The court noted that the trial court "refused to allow a substitution [of counsel] even once" and there was no evidence "that this defendant would have repeatedly requested a change [of counsel]." *Id.* at 508-09, ¶ 21. As a result of the case's specific facts, the court concluded that "the choices presented to [the defendant] were either representation by a lawyer with whom he had a completely fractured relationship . . . or self-representation." *Id.* at 509, ¶ 23. Accordingly, the court found that these circumstances "rendered [the defendant's] waiver involuntary." *Id.*

¶13       The court distinguished its holding in *Moody*, however, by noting that the facts compelled a reversal because they were unlike other cases in which defendants "repeatedly claimed irreconcilable conflict" and showed a "proclivity to change lawyers." *Id.* at 508, ¶ 21 (citing *Henry*, 189 Ariz. at 547; *LaGrand*, 152 Ariz. at 486) (internal punctuation omitted). Additionally, *Henry* and *LaGrand* established that a trial court should determine whether an "irreconcilable conflict" exists by analyzing "the rights and interest of the defendant . . . tempered by exigencies of judicial economy[;]" and specifically, "whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel." *Henry*, 189 Ariz. at 546-47 (quoting *LaGrand*, 152 Ariz. at 486-87).

¶14       In analyzing these factors, the supreme court in *Henry* determined that the defendant's claimed irreconcilable conflict was "nothing more than a disagreement over appropriate defense strategies." *Henry*, 189 Ariz. at 547. The court noted that the defendant's multiple motions either requesting new counsel or electing self-representation strongly supported the trial court's ultimate denial of any further motions. *Id.*

¶15       Additionally, in a case that preceded both *Moody* and *Henry*, the supreme court found no error in the waiver of counsel by a defendant

who argued he was "forced" to self-represent because he would not accept representation from the county public defender's office. *State v. DeLuna*, 110 Ariz. 497, 498-501 (1974). As particularly relevant to the case before us, the supreme court noted:

> A reading of the record indicates that the defendant knew full well of his right to have counsel represent him and that he clearly waived counsel. We find no error in the court's failure to appoint counsel other than the public defender. A defendant is entitled to the appointment of competent counsel, but not of a particular counsel[.]

*Id.* at 500. Although the supreme court has revisited what constitutes the effective assistance of counsel since *DeLuna*, this particular holding—that a criminal defendant is not entitled to appointment of a particular counsel— remains and was reaffirmed by the court in *Henry*. *See supra* ¶ 11.

**¶16** We conclude this case is more akin to *DeLuna* and *Henry* than *Moody*. The record reflects less an irreconcilable conflict with counsel, as Walker claims, than a distinct effort on Walker's part to avoid representation by any counsel who, in Walker's mind, was associated with a public defender's office. As the record shows, this extended even to Walker's advisory counsel, who Walker sought to have removed, although counsel was not associated with the Coconino County Public Defender's office, because Walker believed advisory counsel's advice "not to be on point" and because Walker had a previous relationship with counsel "as a public defender." This suggests that Walker's problems with his initial appointed counsel stemmed more from counsel's status as a public defender than from any irreconcilable conflict arising out of counsel's actions. Thus, the trial court did not err by refusing Walker appointed counsel from outside the county public defender's office.

**¶17** Additionally, nothing in the record indicates that the trial court abused its discretion in determining Walker's waiver of counsel. The record reflects that in August 2013, when Walker began filing motions to have his public defender counsel removed, the public defender told the trial court that Walker wished to represent himself. The court then scheduled three separate hearings—three because Walker failed to appear at the first two—to discuss how to proceed. Walker refused to waive any time related to his speedy trial rights, adding additional pressure on the trial court to resolve how Walker would be represented. In light of Walker's insistence on proceeding to trial, Walker's failure to appear at two hearings to discuss his representation, and his repeated demands for non-public defender

appointed counsel, the trial court did not abuse its discretion in acting on the "exigencies of judicial economy" by requiring Walker to either self-represent or accept counsel from the Coconino County Public Defender's office. *See Henry*, 189 Ariz. at 546-47; *supra* ¶ 13.

## CONCLUSION

**¶18**        Finding no error in the trial court's determination that Walker knowingly, intelligently, and voluntarily waived his right to counsel, we affirm Walker's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama